**BOGDANOVICH v. GASPER et al.**

No. 1482-H.

District Court, S. D. California, Central Division.

July 28, 1941.

Perry G. Briney, of San Pedro, Cal., for libelant.

Lasher Gallagher, of Los Angeles, Cal., for respondents.

HOLLZER, District Judge.

This proceeding comes before the court upon exceptions to a libel in personam.

It is alleged in the libel, in substance, that libelant was employed by respondents as a fisherman and seaman on the vessel, "Jackie Sue"; that while said vessel was being operated on the high seas off the coast of Southern California by respondents, the latter were negligent in failing to provide him with a reasonably safe place to work and with a suitable and safe means, materials and appliances for the performance of his work, in that they neglected to furnish any "Jacob's Ladder" or other means of passing from said vessel to a certain skiff which was alongside of it, and compelled him to jump from said vessel into said skiff without assistance from such equipment or appliances; that upon jumping into said skiff in obedience to an order of an officer of said vessel, he sustained certain injuries, on account of which he seeks to recover damages. These injuries are alleged to have been sustained on May 19, 1939. The libel was filed April 11, 1941. It is further alleged in the libel that relief is sought under the Jones Act, to-wit, Section 688 of Title 46 U.S.C.A.

To this libel respondents have interposed exceptions to the effect that the same is barred by laches, more particularly, by the provisions of subdivision 3 of Section 340, Code of Civil Procedure of the State of California, which provides that the period for the commencement of an action for injury to one caused by the wrongful act or neglect of another is limited to one year.

At the oral argument, the proctors for the respective parties conceded that the sole question to be determined upon said exceptions was whether the aforementioned California statute prescribed the time within which such a libel must be commenced, or whether the two year limitation specified in the Employers' Liability Act, 45 U.S.C.A. § 56, which has been incorporated as a part of the Jones Act, governs.

On behalf of respondents it is asserted that the allegations of the libel set forth nothing more than a charge to the effect that the vessel in question was unseaworthy because of the owners' failure to provide a certain appliance required for the safe operation thereof; that a seaman injured as a result of such condition would be entitled to relief only under the general maritime law, and not entitled to sue under the Jones Act; and that since admiralty courts will customarily apply common-law statutes of limitations by analogy, the present libel is barred by laches because of the failure to file the same within the one year period of limitation specified in the California statute.

While respondents have cited many cases, we are satisfied that in none of these decisions was the question here involved passed upon.

One of these cases is that of Davis v. Smokeless Fuel Co., 2 Cir., 196 F. 753. The decision there announced was rendered in 1912, in other words, prior to the passage of the Jones Act, and furthermore that proceeding was one to recover demurrage for delay in discharging a cargo. We think this statement sufficient to demonstrate that the latter citation is inapplicable here.

The Vema, D.C., 27 F.Supp. 679, 680, is also relied upon. That was a libel in rem to recover on two causes of action, the first for indemnity for personal injuries, alleged to have been sustained on April 10, 1935. The libel was filed more than three years and eight months after the injuries had been received. To this first cause of action exceptions were interposed upon three grounds, first that the libel was "barred by the provisions of Section 688 of Title 46 of the U.S.C.A. and by the provisions of the statutes of the United States referred to therein and incorporated therein by reference;" second, that the libel was barred by the statute of limitations of New York, more particularly by the statute which prescribed that an action to recover damages for a personal injury resulting from negligence must be commenced within three years; and third, that the suit was barred by laches.

It will be noted that in the last case cited the respondent pleaded that either the two year federal statute of limitations or the three year New York statute applied, and that under any contingency the suit was barred by laches. Without discussing the point, the district court disposed of the same with the following brief statement: "While it is true that there are no Statutes of Limitations in Admiralty, the Courts of Admiralty will customarily apply a common-law Statute of Limitations by analogy." However, since the allegations of the libel in the foregoing case failed to disclose facts which under any theory would excuse the delay in filing suit, it was clearly barred by laches, and hence the court was not required to decide the question here involved.

Respondents also rely upon the case of The Sydfold, 2 Cir., 86 F.2d 611. That was a proceeding in the form of a libel in rem, brought under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., to recover for injuries received by libelant's intestate, resulting in his death. The longshoreman died on December 9, 1932, but the libel was not filed until more than two years and six months subsequently. The libel was dismissed on the ground that the cause of action was barred by the New York statute of limitations, more particularly, the statute which specified that an action filed by the legal representative of a decedent to recover damages for a wrongful act causing his death must be commenced within two years after the decedent's death. With respect to the latter decision, it will be observed that the proceeding was filed, not under the Jones Act, but under the Longshoreman's etc. Act, which incorporated no statute of limitations. Accordingly, while it is true that the court there declared that "The New York statute of limitations would, on its face, seem to bar the remedy which libelant seeks to enforce, and courts of admiralty will customarily apply a common-law statute of limitations by analogy" it is patent that the question in the suit at bar was not there involved.

Another decision cited by respondents is that of Westfall Larson & Co. v. Allman-Hubble Tug Boat Co., 9 Cir., 73 F.2d 200,

203; there a libel was instituted to recover damages to libelant's vessel, and also various sums incurred in the defense and in the settlement of other claims arising out of a collision in which said vessel was damaged. The trial court dismissed, for laches, the libel filed for the alleged damage to the vessel, and also ordered a dismissal, for lack of jurisdiction, as to the demand for reimbursement of the other sums. This ruling was sustained on appeal. It is true that in the course of its opinion the Ninth Circuit Court of Appeals, in dealing with the defense of laches, said: "The law is well settled that, in the absence of a showing of such 'exceptional circumstances,' a court of admiralty, in determining the question of laches, will be governed, 'by analogy,' by the state statute of limitations covering actions of the nature disclosed by the libel."

Again, we must point out that a mere statement of what was decided in the foregoing case should suffice to demonstrate that the court there did not determine the question here before us.

In considering the question it will prove helpful to quote the pertinent portion of the statute upon which libelant bases his right to recover. Section 688 of Title 46 U.S.C.A. provides in part: "Any seaman who shall suffer personal injury in the course of his employment may, * * *, maintain an action for damages at law, * * * and in such action *all* statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply * * *." (Emphasis ours.)

It is clear that under the provisions of the law thus incorporated, Federal Employers' Liability Act, 45 U.S.C.A. §§ 51–59, a railway employee suffering injury in the course of his employment in interstate commerce may maintain an action to recover damages on account of such injury, if commenced within two years from the day the cause of action accrued. 45 U.S.C.A. § 56.

In Jamison v. Encarnacion, 281 U.S. 635, at page 640, 50 S.Ct. 440, at page 442, 74 L.Ed. 1082, which involved the application of certain provisions of the Jones Act and the Federal Employers' Liability Act, the Supreme Court declared: "The rule that statutes in derogation of the common law are to be strictly construed does not require such an adherence to the letter as would defeat an obvious legislative purpose or lessen the scope plainly intended to be given to the measure. [Citing cases.] The act is not to be narrowed by refined reasoning. * * * It is to be construed liberally to fulfill the purposes for which it was enacted * * *."

In Engel v. Davenport, 271 U.S. 33, 46 S.Ct. 410, 70 L.Ed. 813, a seaman filed an action against a ship owner for damages on account of injuries alleged to have resulted from the owner's negligence in furnishing a defective appliance. A demurrer to the complaint on the ground, inter alia, that the cause of action was barred by Section 340, Subd. 3, of the California Code of Civil Procedure, was sustained without leave to amend, by a Superior Court of California, and judgment was entered accordingly, which on appeal was affirmed by the Supreme Court of that State. On certiorari the United States Supreme Court ordered a reversal, holding that the period of limitation prescribed by the Employers' Liability Act, and not that fixed by the state statute, governed. In the course of its opinion, the Supreme Court said (271 U.S. at page 36, 38, 39, 46 S.Ct. at page 412, 70 L.Ed. 813):

"Here the complaint contains an affirmative averment of negligence in respect to the appliance. And, having been brought after the passage of the Merchant Marine Act, we think the suit is to be regarded as one founded on that Act, in which the petitioner, instead of invoking, as he might, the relief accorded him by the old maritime rules, has elected to seek that provided by the new rules in an action at law based upon negligence—in which he not only assumes the burden of proving negligence, but also, under section 3 of the Employers' Liability Act, subjects himself to a reduction of the damages in proportion to any contributory negligence on his part. * * *

"This brings us to the question whether a suit brought in a State court to enforce the right of action granted by the Merchant Marine Act may be commenced within two years after the cause of action accrues, or whether a State statute fixing a shorter period of limitation will apply. Section 6 of the Employers' Liability Act provides that 'no action shall be maintained under this Act unless commenced within two years from the day the cause of action accrued.' This provision is one of substantive right, setting a limit to the existence of the obligation which the Act creates. Atlantic Coast Line v. Burnette,

239 U.S. 199, 201, 36 S.Ct. 75, 60 L.Ed. 226. And it necessarily implies that the action may be maintained, as a substantive right, if commenced within the two years.

"The adoption of an earlier statute by reference makes it as much a part of the later act as though it had been incorporated at full length. [Citing cases.] It brings into the later act 'all that is fairly covered by the reference.' Panama Railroad case [Panama R. Co. v. Johnson], 264 U.S. [375], 392, 44 S.Ct. 391 [68 L.Ed. 748]; that is to say, all the provisions of the former act which, from the nature of the subject-matter, are applicable to the later act. It is clear that the provision of the Employers' Liability Act as to the time within which a suit may be instituted, is directly applicable to the subject-matter of the Merchant Marine Act and covered by the reference. In the Panama Railroad Case, 264 U.S. 392, 44 S.Ct. 391, 68 L.Ed. 748, it was held that the contention that the Merchant Marine Act did not possess the uniformity in operation essential to its validity as a modification of the maritime law was unfounded, since the Employers' Liability Act which it adopted, had a uniform operation, which could not be deflected from 'by local statutes or local views of common law rules.' The period of time within which an action may be commenced is a material element in such uniformity of operation. And, plainly, Congress in incorporating the provisions of the Employers' Liability Act into the Merchant Marine Act did not intend to exclude a provision so material, and to permit the uniform operation of the Merchant Marine Act to be destroyed by the varying provisions of the State statutes of limitation.

"We conclude that the provision of section 6 of the Employers' Liability Act relating to the time of commencing the action, is a material provision of the statutes 'modifying or extending the common law right or remedy in cases of personal injuries to railway employees' which was adopted by and incorporated in the Merchant Marine Act. And, as a provision affecting the substantive right created by Congress in the exercise of its paramount authority in reference to the maritime law, it must control in an action brought in a State court under the Merchant Marine Act, regardless of any statute of limitations of the State. See Arnson v. Murphy,

109 U.S. 238, 243, 3 S.Ct. 184, 27 L.Ed. 920."

Finally, we wish to direct attention to the case of Socony-Vacuum Co. v. Smith, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265. There a seaman brought suit under the Jones Act to recover for injuries resulting from his use of a defective appliance of the ship, alleging that he fell and was injured while standing on a defective step in the engine room of the vessel. As stated by the court in that case, the question presented was whether assumption of risk was a defense in such a suit, if the seaman chose to use the unsafe appliance instead of a safe method of doing his work, which was known to him. The court held that, in the absence of proof that the seaman elected to use the unsafe appliance in disobedience of orders, or while not on duty, the admiralty rule of comparative negligence would apply, in mitigation of damages. As there pointed out (305 U.S. at pages 430, 431, 59 S.Ct. at page 266, 83 L.Ed. 265): "The seaman, while on his vessel, is subject to the rigorous discipline of the sea and has little opportunity to appeal to the protection from abuse of power which the law makes readily available to the landsman. His complaints to superior officers of unsafe working conditions not infrequently provoke harsh treatment. He cannot leave the vessel while at sea. Abandonment of it in port before his discharge, to avoid unnecessary dangers of employment, exposes him to the risk of loss of pay and to the penalties for desertion. In the performance of duty he is often under the necessity of making quick decisions with little opportunity or capacity to appraise the relative safety of alternative courses of action. Withal, seamen are the wards of the admiralty, whose traditional policy it has been to avoid, within reasonable limits, the application of rules of the common law which would affect them harshly because of the special circumstances attending their calling. [Citing cases.] It is for this reason that remedial legislation for the benefit and protection of seamen has been liberally construed to attain that end." (citing cases).

The logic of the foregoing cases persuades us that the doctrine applied in Engel v. Davenport, supra, is equally applicable here, and, accordingly, that respondents exceptions should be overruled.